1            UNITED STATES DISTRICT COURT

2              DISTRICT OF MINNESOTA

3

4     --------------------------------------------------------

5                                )
      Milavetz, Gallop & Milavetz, )  Case No. 12-CV-875(MJD/JJG)
6     P.A.,                        )
                                   )
7              Plaintiff,          )
                                   )
8         vs.                      )  St. Paul, Minnesota
                                   )  July 27, 2012
9     Wells Fargo Bank, N.A.,      )  9:31 a.m.
                                   )
10             Defendant.          )
                                   )
11    --------------------------------------------------------

12            BEFORE **THE HONORABLE JEANNE J. GRAHAM**
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13       **HEARING ON DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

14

15    APPEARANCES:
      For the Plaintiff:        Attorney at Law, PLLC
16                              MICHAEL R. DOCHERTY, ESQ.
                                4600 W. 77th Street, Suite 227
17                              Edina, Minnesota 55435

18    For the Defendant:        Lapp Libra Thomson
                                Stoebner & Pusch, Chartered
19                              RICHARD T. THOMSON, ESQ.
                                AMY L. SCHWARTZ, ESQ.
20                              120 South 6th Street, Suite 2500
                                Minneapolis, Minnesota 55402
21

22    **DIGITAL RECORDING TRANSCRIBED BY:**

23

24    Official Court Reporter:  JEANNE M. ANDERSON, RMR-RPR
                                Suite 146 U.S. Courthouse
25                              316 North Robert Street
                                St. Paul, Minnesota 55101

1              **P R O C E E D I N G S**

2                **IN OPEN COURT**

3              THE COURT:  We are here on the matter of Milavetz,

4    Gallop & Milavetz versus Wells Fargo, Civil File number

5    12-00875.  This is assigned to Chief Judge Michael Davis,

6    and myself, Jeanne Graham, as Magistrate Judge.  And we are

7    here today on a referral for Defendant's Motion for Partial

8    Dismissal.

9              Can I have appearances, please, first on the

10   Plaintiff's side?

11             MR. DOCHERTY:  Your Honor, Michael Docherty

12   representing the Plaintiff.

13             THE COURT:  Good morning.  For the Defense?

14             MR. THOMSON:  Your Honor, Richard Thomson

15   representing Wells Fargo.  With me is my partner, Amy

16   Schwartz.

17             THE COURT:  All right, very good.  Well, we will

18   proceed with the Defendant's oral argument first, then we

19   will have a response, and then I will allow you to have a

20   brief reply if you need to.  Go ahead.

21             MR. THOMSON:  Thank you.  May it please the Court?

22   Plaintiffs First Amended Complaint contains 15 counts.  This

23   Motion for Partial Dismissal under Rule 12(b)(6) seeks the

24   dismissal of eight of those fifteen counts.  Plaintiff

25   consents to the dismissal of five of those eight counts,

1    leaving three counts for the issues this morning, fraudulent

2    misrepresentation, conversion, and Minnesota's Deceptive

3    Trade Practices act.

4         This motion is simple.  The law is clear.  And I

5    will try to be as brief as I know how.

6         THE COURT:  Okay.

7         MR. DOCHERTY:  First fraudulent misrepresentation.

8    Plaintiff fails to state a claim for fraudulent

9    misrepresentation, because Plaintiff fails to allege the

10   necessary scienter by Wendy Little, Wells Fargo's employee,

11   who made the misrepresentation that is alleged here.

12        Let me first be clear that it is the scienter of

13   Wendy Little that matters, here, not any kind of collective

14   corporate scienter on the part of Wells Fargo.  Plaintiff

15   alleges that when Wendy Little told Plaintiff that the fake

16   check had cleared, Wendy Little could have looked into Wells

17   Fargo's corporate records and seen that in fact the fake

18   check had been returned.

19        Plaintiff wants to impute that knowledge that

20   Wells Fargo as some corporate entity had to Wendy Little, so

21   that it could be said that she knew at the time of her

22   representation that her representation was false.  But, the

23   law is clear that there is no collective corporate scienter.

24   There has to be at least one individual person who by

25   herself possesses the requisite scienter.

1        I know it is bad form at oral argument to cite

2   cases, but it might save the Court some legal research time

3   if I do.  The two recent cases in Minnesota holding that

4   there is no collective corporate scienter and that what is

5   relevant is the subjective state of mind of the individual

6   are *Cummings versus Paramount Pictures*, which is at 715

7   F.Supp. Second 880, and in particular page 906.  And also,

8   *In re:  Medtronic Inc. Securities Litigation*, which is at

9   618 F.Supp. 2d 1016, at page 1035.  Both of these are

10  decisions from 2010 from the District of Minnesota.

11       Now, two of --

12       THE COURT:  And was that in your reply?  I can't

13  remember.

14       MR. THOMSON:  We did not --

15       THE COURT:  Okay.

16       MR. THOMSON:  -- cite those cases in our reply.

17  The reason I mention them today is that we have had the

18  luxury of some time between --

19       THE COURT:  Sure.

20       MR. THOMSON:  -- submitting the written pleadings

21  and papers.  And as I looked at Plaintiff's Response Brief I

22  thought maybe --

23       THE COURT:  Okay.

24       MR. THOMSON:  -- there might be some confusion.

25  So I wanted to clear up that point, in particular.

1              THE COURT:  Okay.

2              MR. THOMSON:  To allege the scienter that is

3      required for fraudulent misrepresentation, you have to

4      allege one of three things.  First, you can allege that the

5      misrepresenter knows or believes that the matter is not as

6      he or she represents it to be.  Nowhere does Plaintiff's

7      Complaint allege that Wendy Little knew or believed her

8      representation was false.

9              Second, you can allege that the misrepresenter

10     spoke positively and without qualification, but was

11     conscious that she was ignorant of the real truth.  Nowhere

12     does Plaintiff's Complaint allege that Wendy Little knew

13     that she was ignorant of the real truth when she made her

14     representation.

15             Third, you can allege that the misrepresenter

16     realized that the information on which she relied was not

17     adequate or dependable, but nevertheless made her positive

18     and unqualified assertion.  Nowhere does Plaintiff's

19     Complaint allege that Wendy Little realized that the

20     information on which she relied was inadequate or

21     undependable.

22             Now, if Plaintiff wants to state a claim for

23     fraudulent misrepresentation, Plaintiff needs to amend its

24     Complaint to make the necessary allegations.  If Plaintiff

25     is willing to undertake the litigation risks and

1      responsibilities of making that allegation, and if Plaintiff

2      believes it has a good faith Rule 11 basis to make one of

3      those allegations.

4              But, as it stands now, Plaintiff has alleged only

5      that Wendy Little could have gained knowledge of the true

6      facts if only she had looked into the information that

7      allegedly was reasonably available to her at Wells Fargo.

8      That is a classic allegation of negligence.  Negligence is a

9      far cry from fraudulent misrepresentations.

10             The people in China who perpetrated this Nigerian

11     check scam, they committed fraudulent misrepresentation.  It

12     is quite a bit more doubtful that Plaintiff in good faith

13     can allege that Wendy Little committed the same category of

14     wrongdoing.

15             Conversion.  Like the claim for fraudulent

16     misrepresentation, Plaintiff's conversion claim fails

17     because Plaintiff does not allege that Wendy Little acted

18     with the requisite scienter.  To state a claim for

19     conversion, a Plaintiff must allege that the Defendant

20     interfered with its property interest without lawful

21     justification.  That is a part of the affirmative claim.

22             Here, Plaintiff alleges that Wells Fargo

23     interfered with plaintiffs' property interest when Wells

24     Fargo wire transferred funds from Plaintiff's IOLTA account

25     to China.  But, Plaintiff also alleges that Wells Fargo made

1    the wire transfer at Plaintiff's own instruction.  This

2    means that the Complaint, itself, alleges that Wells Fargo

3    had lawful justification for making the wire transfer.  The

4    only way around that hurdle for Plaintiff, here, is to

5    allege that Wells Fargo induced that instruction through

6    duress or fraud.

7             The law is clear on that point, and we have cited

8    it, I believe, in our Reply Brief.

9             Again, Plaintiff does not allege that anybody at

10   Wells Fargo used fraud or duress to obtain Plaintiff's

11   instruction to make the wire transfer.  And for that reason,

12   Plaintiffs failed to state a claim for conversion, given the

13   fact that, as they alleged, they instructed Wells Fargo to

14   make this wire transfer.

15            The Deceptive Trade Practices Act.  There are

16   several reasons the Complaint fails to state a claim under

17   Minnesota Deceptive Trade Practices Act.  I will focus on

18   just one.

19            The statute provides for only injunctive relief

20   and nothing else.  Minnesota's Private Attorney General

21   Statute, which allows a private plaintiff to bring a claim

22   for damages under certain laws listed in the Private

23   Attorney General's Statute does not apply to the Deceptive

24   Trade Practices Act because the Trade Practices Act is not

25   one of those listed laws.

1    So, the only relief allowed under the Minnesota

2    Deceptive Trade Practices Act is injunctive relief; that is

3    clear.  Because the Deceptive Trade Practices Act allows

4    only injunctive relief, a complaint fails to state a claim

5    under that Act unless it states a claim for injunctive

6    relief.

7    A mere demand for unspecified injunctive relief,

8    which is what you find in the Plaintiff's First Amended

9    Complaint is not enough.  You have to allege the existence

10   of prospective conduct that creates the threat of future

11   injury.

12   Injunctions don't remedy past injuries, they

13   remedy the threat of future injury.  And that is why you

14   have to allege that there is conduct ongoing, or prospective

15   conduct that creates that threat.

16   Plaintiff's Complaint does not allege that Wells

17   Fargo is currently engaged in or is about to engage in any

18   conduct that creates the threat of future injury.

19   Consequently, Plaintiff fails to state a claim under

20   Minnesota's Deceptive Trade Practices Act.

21   Now, dismissal of these three counts, along with

22   the other counts that Plaintiff agrees should be dismissed

23   still leaves Plaintiff with plenty of claims against Wells

24   Fargo, here.  By my tally, Plaintiff still has seven

25   separate counts against Wells Fargo, including negligence,

1    negligent misrepresentation, breach of fiduciary duty,

2    breach of some special duty, and violation of Article 4 of

3    the Uniform Commercial Code.  But, the law is very clear

4    that Plaintiff fails to allege the necessary factual

5    elements of claims for fraudulent misrepresentation,

6    conversion, and injunctive relief under the Deceptive Trade

7    Practices Act.  And these three counts therefore must be

8    dismissed as a matter of law.

9            If I may, Your Honor, I will save my remaining

10   time for rebuttal.

11           THE COURT:  Okay, all right.  All right, on behalf

12   of Plaintiff?

13           MR. DOCHERTY:  Thank you, Your Honor.  Again,

14   Michael Docherty representing the law firm of Milavetz,

15   Gallop & Milavetz.  Wells Fargo has argued with respect to

16   the fraud claim that we've failed to allege the requisite

17   intent, or as counsel referred to, as scienter.

18           I think it is important in this motion to keep in

19   mind that in a Rule 12 Motion, all of the facts must be

20   construed in favor of the Plaintiff, as we know; but, not

21   only the facts, but all reasonable inferences from those

22   facts must be construed in the Plaintiff's favor.  The issue

23   here is the knowledge requirement, including fraud.  And

24   counsel indicated or argued that nowhere in our Complaint do

25   we allege the requisite scienter by Wendy Little.

1           We don't dispute with Wells Fargo that the

2     requisite intent has to be that of Wendy Little.  We are not

3     arguing, we have not in our brief for any kind of collective

4     or corporate scienter.  But I would refer the Court to

5     paragraph 6 of the Amended Complaint, which states, quote,

6     "Prior to the wire transfer, Wells Fargo falsely represented

7     to MGM the fraudulent check, Exhibit A, had cleared, and

8     issued the outgoing wire transfer, even though Wells Fargo

9     and their customer service representatives working with MGM

10    knew or should have known that the cashier's check was

11    fraudulent."

12          Now, the customer service representatives working

13    with MGM are identified elsewhere in the Complaint as Wendy

14    Little and another person at the bank.  So, we have in fact

15    alleged that Wendy Little knew or in the alternative should

16    have known of the falsity of her statement.

17          Now, the cases make clear, as counsel for the Bank

18    agrees, that it is not necessary to show knowledge that the

19    statement is false in order to state a claim for fraudulent

20    misrepresentation.  It is sufficient to show that the

21    representer made the statement not knowing whether it was

22    true or false or knowing that the information she relied

23    upon was not adequate to make the unqualified assertion

24    being made.

25          The Complaint alleges that the Bank, Wells Fargo,

1   collectively knew days before the misrepresentation that

2   Wendy -- I'm sorry, that the check had been returned.  And

3   again, we are not arguing any kind of collective knowledge

4   or collective intent.

5         The statement at issue is the statement by Wendy

6   Little, the individual customer service representative, that

7   the check had cleared.  And I would submit to the Court that

8   that statement, making a statement like that implies that

9   you have checked something.  There is the reasonable

10  inference that the Court can draw that in that statement is

11  the clear implication that you have checked something.

12        I would make the analogy of going to the Post

13  Office and asking the clerk, has my package arrived?  If the

14  clerk answers that question, either way, there is a clear

15  implication in that answer that they have checked something.

16        And I think the same reasoning applies to this

17  question:  Has the check cleared?  Yes, it has.  There is a

18  clear implication and a clear inference that should be drawn

19  in the Plaintiff's favor that the representer is saying that

20  she has checked.

21        Now, because Wells Fargo had the knowledge, the

22  importance of that, again, is not to argue any kind of

23  collective intent.  The fact that Wells Fargo had the

24  knowledge in its database indicates that Wendy Little must

25  not have checked.  She made the statement, she -- we know

1   she didn't check, so she clearly made the statement knowing

2   that she didn't have adequate information to make the

3   unqualified assertion.

4        Wells Fargo argues in their brief, their reply

5   brief, that perhaps Wendy Little didn't check because she

6   mistakenly didn't think she had to.  I would submit that

7   that is an inference from the facts which Wells Fargo is

8   asking this Court to draw in its favor.  And I would suggest

9   or remind the Court that, again, those inferences have to be

10  drawn in favor of the Plaintiff.

11       The knowledge requirement here must also be viewed

12  in light of Wendy Little's e-mails to the law firm.  There

13  are two of them with nearly identical language.  One was

14  sent shortly after the other.  In that e-mail she says,

15  quote, "We need to watch the account to be assured this

16  check has cleared the account."  And then a little later in

17  the e-mail, "Once cleared, we will be able to process the

18  wire..." --

19       THE COURT:  Remind me, is the e-mail referred to

20  in the Complaint?

21       MR. DOCHERTY:  It is, Your Honor.

22       THE COURT:  Okay.

23       MR. DOCHERTY:  It is quoted, in fact both of them

24  are quoted the verbatim in the Complaint.

25       THE COURT:  All right.  Thank you.  Go ahead.

1        MR. DOCHERTY:  So, that e-mail is central to our

2   case, obviously, not only for these counts, but for the

3   other counts that are not being challenged here.  So, again,

4   keeping that e-mail in mind, keeping in mind that the e-mail

5   was made to Jeanine Hanson, a paralegal at the law firm whom

6   Wendy Little had dealt before, the inference, the clear

7   inference there is again when she made the statement, when

8   the e-mail comes, the law firm says we will have to watch

9   the account to make sure this check clears.  And then a few

10  days later someone from the law firm goes to the bank and

11  says to the person who sent the e-mail, has check cleared?

12  Again, that is further grounds for when she made the

13  statement, she was clearly implying that she had checked.

14  And she -- because we know Wells Fargo had the information,

15  we know that she must not have checked.

16        The conversion claim -- I will take these a little

17  bit out of order as counsel did.

18        THE COURT:  Okay.

19        MR. DOCHERTY:  Because it is somewhat related to

20  the fraud claim.  Conversion is defined under Minnesota law

21  as an act of willful interference with the personal property

22  of another which is without justification or inconsistent

23  with the rights of the person entitled to use the property.

24        Now, in its brief, Wells Fargo refers to

25  conversion as an intentional tort.  That is not necessarily

1    true.  And I, too, am going to cite a couple of cases that

2    are not in our brief.  And I apologize for doing that, but

3    like counsel, I have had a little time to work on this, too.

4            In *Farwell* -- sorry, *Hauser versus Farwell, Ozmun,*

5    *Kirk & Company* 299 F.Supp. 387, at page 395, that is a

6    District of Minnesota case from 1969.  The Court says, "The

7    innocent misapplication or deprivation of funds owned by

8    others is in the law no less a conversion, because such was

9    done innocently or in ignorance."

10           Now, Wells Fargo in their brief argue that,

11   essentially, that the Plaintiff must show an unlawful

12   interference.  Again, that is not necessary.  It is

13   sufficient under the *Hauser* case and other cases that are

14   cited in *Hauser* that interference need not be lawful.  It is

15   sufficient if it is without justification or inconsistent

16   with the rights of the owner.

17           Wells Fargo argues that because the law firm

18   authorized the transfer by signing the wire transfer after

19   the misrepresentation was made, that the interference could

20   not have been unlawful, could not have been unjustified.  I

21   suggest that under that reasoning, anyone who converts

22   property through misrepresentation could avoid liability for

23   conversion, as long as they were able to convince the victim

24   to sign something.  I don't think the law would support that

25   result.

1          Wells Fargo also argues in their brief that we

2     need to show duress or fraud to state a claim for

3     conversion.  And they cite some cases that in fact rely on

4     duress or fraud to support the unjustified nature of the

5     interference in those cases.  But, none of those cases say

6     that the plaintiff is limited to duress or fraud as the

7     basis for the unlawful nature of the interference.

8          And again, I would refer the Court to that *Hauser*

9     case that an innocent misapplication or innocent

10     interference with property rights can in fact justify a

11     claim of conversion.

12          We have also argued in our brief in response to

13     the Bank's argument that it doesn't matter that because this

14     was a trust account, the law firm didn't have ownership of

15     all of the funds in the account.  It is clear under

16     Minnesota law that a bailee can make a claim for conversion.

17          Now, Wells Fargo responds to our -- responded to

18     our arguments on bailments in their reply brief by citing

19     the *Witmeyer* case out of Virginia.  But, that case doesn't

20     really offer Wells Fargo any comfort.  It doesn't address

21     the bailment argument that we have made.  The plaintiff in

22     the *Witmeyer* case, also a lawyer, also the victim of a

23     Nigerian-type scam made a subrogation argument in that case.

24     And the Court spent some time dissecting and finally

25     rejecting that subrogation argument.  But, that is a totally

1      different argument than the one we are making.  We are not

2      arguing that the law firm has a subrogation right and is

3      asserting a subrogation right with respect to these funds.

4              We have argued in our brief that an attorney with

5      a trust account is in fact in a bailor/bailee relationship

6      with clients.  Now, bailment is a pretty broad and fairly

7      simple concept under the law.  If it is defined in Black's

8      Law Dictionary as a delivery of goods or personal property

9      by one person to another in trust for the execution of a

10     special object upon or in relation to the goods.

11             Under Minnesota law, and again I am going to cite

12     a case not cited in our brief, but it is an old case,

13     *Caldwell versus Metropolitan Airport Commission*, 386 N.W.2d

14     246, at page 247, a Court of Appeals case from 1986 defines

15     bailment or sets forth the elements of a bailment under

16     Minnesota law as follows.  Number one, delivery without

17     transfer of ownership.  Number two, implied or express

18     acceptance, and number three, an express or implied

19     agreement that the goods be returned.  I submit that all of

20     those elements are present in the attorney-client law firm

21     trust account relationship.

22             Now, we have cited in our brief the *Brown versus*

23     *Shaw* case, a very old case in Minnesota.  We have also cited

24     some more recent ones.  But, it has long been the law in

25     Minnesota that a bailee may maintain an action for

1    conversion.  And the fact that ownership was in a person

2    other than the bailee is no defense to a claim of

3    conversion.

4          Finally, the Deceptive Trade Practices Act, I will

5    spend only a few moments on this, Your Honor.  We have

6    pleaded -- we have requested injunctive relief.  We have

7    alleged future harm in the sense of a loss of business from

8    clients, that is in paragraph 219.

9          Because we submit there is a public benefit here,

10   possible injunctive relief could be for the public at large.

11   For example, Wells Fargo could send a notice to all

12   Minnesota attorneys with trust accounts warning them of this

13   type of scam or something like that.

14         On the public benefits aspect of that, the bank

15   has argued that there is no public benefit because no one

16   but the law firm here was injured.  The *Collins versus*

17   *Minnesota School of Business* case makes clear that what

18   matters is the dissemination of the representations to the

19   public at large, not the number of people injured.

20         And I suggest that at the very least this count

21   requires some discovery before the Court considers a

22   dismissal to determine whether the representations were in

23   fact false as to other customers.

24         And that is all I have, Your Honor.

25         THE COURT:  All right.

 1              MR. DOCHERTY:  Thank you very much.

 2              THE COURT:  Very good.  Thank you.  Brief reply?

 3              MR. THOMSON:  Thank you, Your Honor.

 4              On the issue of scienter, I will try to address

 5     the points in the order that counsel made them.  They refer

 6     to paragraph 6 of their Complaint.  Paragraph 6 says, "Prior

 7     to the wire transfer, Wells Fargo falsely represented to

 8     MGM, the Milavetz Law Firm, that the fraudulent check had

 9     cleared and not issued the outgoing wire transfer even

10     though Wells Fargo and their customer services

11     representatives working with MGM knew or should have known

12     that the cashier's check was fraudulent.

13              This allegation does not say that Wendy Little,

14     who is the person who made the alleged false representation

15     knew that the check was a fake check at the time she made

16     her representation.  It says that Wells Fargo and unnamed

17     customer service representatives, in the plural, knew or

18     should have known.

19              That allegation fails Rule 9(b) when you are

20     talking about an allegation of fraud, because it lacks the

21     particularity to which the Defendant is entitled.  Who is

22     the person, who are the people who actually knew this, if

23     they knew it at all?

24              If the Milavetz Law Firm wants to make the

25     allegation that Wendy Little actually knew at the time she

1    made her representation that the check had cleared, that in

2    fact the check had not cleared and had been returned, then

3    let the Milavetz Law Firm in compliance with Rule 11, if

4    they have a good faith basis to do so, make that allegation

5    so that Wells Fargo, then, if there is discovery on that

6    claim and if they do make that claim, can seek its remedies

7    under Rule 11 and can also argue to the jury that the

8    Milavetz Law Firm was willing to make that allegation after

9    the jury hears the evidence in this case.  Wells Fargo is

10   entitled to that specificity under Rule 9(b).

11          In addition, counsel argues that Wendy Little's

12   statements implied that she had checked into Wells Fargo's

13   records.  The implications of Wendy Little's statements are

14   not the issue, here.  The issue here is what was in Wendy

15   Little's subjective state of mind if she made implications

16   that she knew not she was making.  Or, if she even made

17   implications but was checking different records, that is

18   okay.  That is not an allegation of scienter.

19          They have to make the allegations

20   straightforwardly and with the specificity required by Rule

21   9 that Wendy Little actually knew that she was lying, or

22   actually knew that she didn't know whether or not she was

23   telling the truth but went ahead and said it, anyway.  They

24   don't make that allegation.  And fraud is a serious matter

25   to allege, especially against a bank.  If they are going to

1    make that allegation, they have got to make it according to

2    Rule 9 with the specificity that the Rules require.

3         They talk about the e-mail that is referred to in

4    the Complaint.  And the Court can see this when the Court

5    reviews the Complaint.  That e-mail says something to the

6    effect of:  We need to watch this account.  That e-mail was

7    sent before the alleged misrepresentation was made.

8         The fact that she says we need to watch this

9    account is not a statement that I did look at this account,

10   when in fact she didn't look at the account.  Or, that I

11   looked at the part of the account that would have told me

12   the truth, rather than another record that didn't tell me

13   the truth.

14        Again, the fact that she sent that e-mail prior to

15   the misrepresentation that is alleged here does not allege

16   that she had the requisite scienter when in fact she made

17   the representation that is alleged here.

18        And again, the Milavetz Law Firm either has to

19   step up to the plate and make the allegation that she had

20   the alleged scienter, or it has to back away from this

21   claim.

22        On conversion.  Counsel says that it is okay if

23   the conversion is innocent and he seems to think that means

24   that this is not an intentional tort.  It is still an

25   intentional tort.  You have to intend to take the property.

1    But, you can do so innocently.  And it does not have to be

2    an unlawful taking.  There doesn't have to be any violation

3    of the criminal code or anything like that.  That is fine.

4    But, the one element, and counsel read this, and when he was

5    reading the law that he is overlooking is that the taking

6    has to be, quote, "without justification," closed quote.

7         The justification here, as alleged in the

8    Complaint, is that Milavetz Law Firm instructed Wells Fargo,

9    make this wire transfer.  Wells Fargo would have been guilty

10   of conversion if it hadn't made the wire transfer.

11        They say, if a defendant is able to convince the

12   plaintiff to sign something, then the defendant can get away

13   with conversion.  That is not at all what the cases say.

14   That is not at all what Wells Fargo is arguing here.

15        If Wells Fargo convinced through fraud, trickery,

16   duress, any of the devices that the cases and the

17   Restatements say will override a property owner's consent,

18   if Wells Fargo used those tactics to convince, then Wells

19   Fargo would have been guilty of fraud or duress.  And under

20   the Restatement, under the case law, Wells Fargo would then

21   not be justified in relying on the Plaintiff's instruction

22   because Wells Fargo would wrongfully have induced that

23   instruction.  But merely negligently making a representation

24   which may have induced the instruction does not give Wells

25   Fargo any reason to not rely on the instruction.  It is only

1    if you know that you have tricked somebody into making an

2    instruction that you are not justified in relying on it.

3           Now, counsel makes arguments about bailment that

4    have nothing to do with this issue of justifiable reliance.

5    They have to do with a different reason for dismissing this

6    Complaint or this claim.

7           The different reason is that the Milavetz Law Firm

8    did not own these funds at the time of the alleged

9    conversion.  The conversion claim actually belongs to the

10   owners of those funds who were the clients of the Milavetz

11   Law Firm.  That is a different argument from the justifiable

12   sending of the monies.  But, nevertheless, the argument is

13   still wrong.

14          They say that this was a bailment.  It may have

15   been a bailment.  That doesn't give the Milavetz Law Firm

16   ownership of those funds unless the Milavetz Law Firm is

17   subrogated to the rights of the true owners of those funds.

18   In other words, they don't have the right to claim that

19   there was a conversion here unless they are subrogated to

20   the rights of the true owner.  The bailee has the right to

21   sue for conversion, only because the bailee is subrogated to

22   the rights of the bailors.

23          So, although counsel says that they don't have to

24   show subrogation, in fact they do.  Because without

25   subrogation, there just is no claim to assert the rights of

1    the true owners of the property.

2          And for the reasoning set forth in that Virginia

3    case, which I think is very eloquent, the lawyers cannot

4    claim that they have the right to sue on behalf of the

5    people whom the lawyers, themselves, have let down by not

6    watching their trust funds with adequate security.

7          On the Deceptive Trade Practices Act, they say

8    they have requested injunctive relief.  If you look at the

9    Complaint, there is just a boilerplate recitation, we want

10   injunctive relief.  They don't say what injunction they

11   want.  That, in itself, is sufficient to dismiss the

12   Deceptive Trade Practices Act claim.

13         Again, Milavetz Law Firm, if they can, can try to

14   rectify that problem through an Amended Complaint.  They

15   say, well, they have alleged future harm because there is

16   the possibility that there could be a loss of the business

17   of clients in the future.

18         They don't tie that to anything that Wells Fargo

19   is currently doing or is currently threatening to do.

20   Again, they have to show that Wells Fargo is doing something

21   or about to do something that creates an immediate threat of

22   future harm that has to be repaired through an injunction.

23         We don't need to get to the question of whether

24   there is a public benefit here.  And the reason we don't is

25   that it is now perfectly clear that the Deceptive Trade

1    Practices Act authorizes only injunctive relief, not

2    damages.  But, being a lawyer, I have to cover everything,

3    and I hope you will forgive me.

4         I want to tell you that there is no public benefit

5    that is alleged here.  Counsel says, well, maybe if we did

6    discovery we could find some public benefit.  That is not

7    how a pleading works.  You have to have your Rule 11 basis

8    at the time you make the pleading.  You don't make a claim

9    and then go fishing for facts that might justify the

10   pleading.

11        Rule 11 says you have a good faith basis at the

12   time you make the Complaint.  And if you look at the

13   Complaint, here, the representation that is made is Wells

14   Fargo offers these products to people and these products

15   will protect you from fraud.  And the Plaintiff says, well,

16   they didn't offer that product to us, they didn't give that

17   product to us.  That is essentially a breach of contract, a

18   breach of promise allegation.  There is no allegation in the

19   Complaint that Wells Fargo failed to give this product to

20   anybody else to whom it was offered, until the Milavetz Law

21   Firm steps up to the plate under Rule 11 and makes the

22   allegation that Wells Fargo made this blanket representation

23   to the world and fulfilled it as to -- or failed to fulfill

24   it for more than one person.  They don't state any public

25   benefit.  It is just a private breach of promise claim.  So,

1     there is no public benefit here, either.

2          But, the simplest route to dismissal of this claim

3     is, they have no claim for injunctive relief because they

4     don't allege any present conduct by Wells Fargo that

5     threatens future harm.  And on the other two claims,

6     conversion and fraudulent misrepresentation, they do not

7     allege that when Wendy Little actually knew at the time she

8     was making the representation that it was false, or actually

9     knew at the time she was making the representation that she

10    didn't know whether it was true or false, but went ahead and

11    made the representation, anyway.

12         Fraudulent misrepresentation requires a certain

13    level of good old American evil that you know in your heart

14    that what you are doing isn't quite right.  They don't make

15    that allegation here.

16         THE COURT:  Okay.  All right, thank you.  Well, I

17    will take it under advisement, as I must.  So, I will issue

18    an R & R.  And then you folks will have an opportunity to

19    make any objections that you would like to bring to the

20    Chief's attention.  And he will look it over.  All right?

21         MR. DOCHERTY:  Thank you.

22         THE COURT:  And I haven't seen you folks yet,

23    right?  On the Rule 16 or anything?  This was your first --

24         MR. DOCHERTY:  That is correct, Your Honor.

25         MR. THOMSON:  That is correct.

1          THE COURT:  Is this how you responded to the --

2          MR. THOMSON:  Exactly.

3          THE COURT:  All right, then, normally I talk to

4    people about, of course, trying to figure out a way to

5    resolve matters, but it might be best if I just focused on

6    this part first and we will see where we are at.  And then I

7    will encourage you to try to get it resolved.  All right?

8    Very good, we will be in recess.  Thank you.

9          MR. THOMSON:  Thank you, Your Honor.

10          MR. DOCHERTY:  Thank you, Your Honor.

11          (Adjournment.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                             CERTIFICATE

3

4

5

6                 The foregoing transcript is a

7    transcription of the digital audio recording that was

8    produced in the above matter by Court staff and later

9    submitted to myself, Jeanne M. Anderson, for transcription.

10   An official court reporter was not present to produce a

11   stenographic and verbatim record of the aforementioned

12   proceeding at the time and place specified herein.

13

14

15

16            Certified by:   s/ Jeanne M. Anderson

17                            Jeanne M. Anderson, RMR-RPR
                              Official Court Reporter
18

19

20

21

22

23

24

25