UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Milavetz, Gallop & Milavetz, P.A., | Civil No. 12-0875 (MJD/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Wells Fargo Bank, N.A., | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the Court on July 27, 2012, for a hearing on Defendant's Motion for Partial Dismissal (ECF No. 6). The motion was referred to this Court by the Honorable Michael J. Davis, Chief Judge, United States District Court, in an order of reference dated June 22, 2012 (ECF No. 17). For the reasons set forth below, the Court recommends that the motion be granted in part and denied in part.

## I.   ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The facts in this section were taken from the allegations of the First Amended Complaint ("Am. Compl.") (ECF No. 4). Plaintiff Milavetz, Gallop & Milavetz ("Plaintiff") is a law firm, and Defendant Wells Fargo Bank ("Defendant") is a national bank. On October 25, 2009, one of Plaintiff's employees received an email from an individual claiming to be a woman named Hira Shio. (Am. Compl. ¶¶ 56, 57.) Shio claimed that she was injured while traveling in Minnesota and requested Plaintiff's assistance in obtaining a $400,000 settlement related to that injury. (*Id.* ¶ 57.) On November 4, 2009, Plaintiff received what appeared to be an official cashier's check from Citibank, in the amount of $400,000, in settlement of Shio's injury claim. (*Id.* ¶ 58.) Later

that day, another one of Plaintiff's employees deposited the check in Plaintiff's Interest on Lawyer Trust Accounts (IOLTA) account at Defendant's bank. (*Id.* ¶¶ 59, 60.)

On November 5, 2009, an employee of Plaintiff contacted Defendant's employee Wendy Little and requested her assistance with monitoring when the check would clear. (*Id.* ¶ 65.) Plaintiff's employee also indicated that Plaintiff would be making a wire transfer out of that deposit. (*Id.* ¶ 63.) That same day, Little sent an email to Plaintiff's employee stating, "[w]e need to watch the account to be assured this check has cleared the account. . . . Once cleared we will be able to process the wire [transfer] . . . ." (*Id.* ¶ 67.) Plaintiff's employee telephoned another of Defendant's employees, Eduardo Montes, and told him that Plaintiff's wire transfer was contingent on the check clearing. (*Id.* ¶ 70.) On November 12, 2009, Plaintiff's employee asked Little whether the check had cleared and whether everything was ready for the wire transfer to be sent, to which Ms. Little responded, "Yes." (*Id.* ¶ 74.) The wire transfer was sent later that day. (*Id.* ¶ 77.) Upon arrival at a bank in Hong Kong, the funds were withdrawn and have been irretrievably lost. (*Id.* ¶ 90.)

Plaintiff has since learned that the entire transaction with Shio was fraudulent and that the purported Citibank check was counterfeit. (*Id.* ¶ 93.) Defendant received notice of the dishonor of the counterfeit check by November 9, 2009, at the latest. (*Id.* ¶ 78.) Defendant did not notify Plaintiff of this until November 18, 2009. (*Id.*)

More than two years prior to this incident, on January 15, 2007, Montes and two other employees of Defendant provided written and verbal assurances to Plaintiff about the superiority of Defendant's fraud detection capabilities. (*Id.* ¶ 102.) Defendant gave Plaintiff a manual which stated that Defendant "is leading the fight to protect your accounts from fraudulent transactions

with tools such as Image Positive Pay and Payee Validation for both deposited and teller cashed checks." (*Id.*) Plaintiff alleges this advertised protection was not provided to it. (*Id.*)

On April 25, 2012, Plaintiff filed an Amended Complaint against Defendant for violation of 18 U.S.C. § 1343 (Count I), negligence (Count II), negligent misrepresentation (Count III), fraudulent misrepresentation and suppression of material facts (Count IV), negligent hiring and training (Count V), promissory estoppel (Count VI), breach of undertaking of special duty (Count VII), breach of fiduciary duty (Count VIII), breach of customary practices (Count IX), violation of Minn. Stat. § 336.4-202 (Count X), violation of Minn. Stat. § 336.4A-202 (Count XI), violation of Minn. Stat. §§ 325D.13 and 8.31 (Count XII), violation of Minn. Stat. §§ 325D.44 and 8.31 (Count XIII), conversion (Count XIV), and violation of 18 U.S.C. § 1962 (Count XV). Defendant now moves to dismiss eight of Plaintiff's fifteen causes of action, counts I, IV, V, XI, XII, XIII, XIV, and XV. Plaintiff consents to the dismissal of counts I, V, XI, XII, XIV (but only with respect to allegations of wrongful set-off and negligence per se), and XV. Thus, only three claims are in dispute, counts IV, XIII, and the component of XIV alleging conversion. (Pl.'s Mem. Opp'n Mot. Partial Dismissal at 1, ECF No. 13.)

## II. STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. ANALYSIS[1]

### A. Count IV (Fraudulent Misrepresentation and Suppression of Material Facts)

Defendant argues that Plaintiff has failed to state a claim for fraudulent misrepresentation because Plaintiff has not alleged that Wendy Little knew her representations were false, that she was consciously ignorant of the truth, or that she recognized the information on which she relied was not adequate to support her assertion. Instead, Defendant argues Plaintiff has merely asserted Little's lack of knowledge. In response, Plaintiff contends it has sufficiently alleged that Wendy Little made a misrepresentation without knowing the truth or falsity of that representation. Plaintiff further argues that Little must have been aware of her lack of knowledge because she "could easily have reviewed the activity on MGM's account by logging into the account before making the unqualified assertion that the check had cleared." (Pl.'s Mem. Opp'n Mot. Partial Dismissal at 6.)

Both parties agree that fraudulent intent can be established by "showing that the party knew his statements to be false . . . or having no knowledge of their truth or falsity, he yet represented them to be true to his own knowledge." *Hanson v. Motor Co.*, 278 F.2d 586, 591 (8th Cir. 1960) (quoting *Swanson v. Domning*, 86 N.W.2d 716, 720 (Minn. 1957)). Both parties also agree that the misrepresentor must "either [be] conscious of [her] ignorance of the truth, or realize[] that the information on which . . . she relies is not adequate or dependable enough to support such a positive unqualified assertion." *Florenzo v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986).

---

[1] At the July 27, 2012 hearing, the Court invited the parties to submit letter responses to new cases that were cited for the first time at oral argument. New arguments in those letters were not considered.

4

Plaintiff argues that Little's awareness of her lack of knowledge is a reasonable inference arising from the fact that Wells Fargo made an entry on Plaintiff's account indicating that the check had not cleared, and because Little could have easily checked the account to confirm that the check had in fact cleared. Even viewing the facts favorably to Plaintiff, the only reasonable inference from these facts is that Little may have acted negligently in failing to check the account before stating that the check had cleared. No allegations support an inference that she was conscious of her ignorance about the status of the check.

At the motion hearing, Plaintiff further argued that paragraph six of the Amended Complaint satisfies the requirement of alleging awareness: "Wells Fargo and their customer service representatives working with [Plaintiff] knew or should have known that the cashier's check was fraudulent." (Am. Compl. ¶ 6.) Plaintiff argued that "customer service representatives" referred to Little, among others, and that the phrase "should have known" satisfied the scienter requirement. The Court disagrees. These allegations do not comply with Federal Rule of Civil Procedure 9(b), which requires parties alleging fraud to "state with particularity the circumstances constituting fraud or mistake." To comply with Rule 9(b), Plaintiff must specifically identify Little and specifically allege her awareness of her lack of knowledge. *See Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010).

Throughout the Amended Complaint and opposition memorandum, Plaintiff alleges that Defendant, Wells Fargo, was aware of various facts, but does not specify which employees or agents of Wells Fargo were aware of those facts. While Plaintiff never explicitly states that it is relying on a theory of collective corporate scienter, alleging a defendant corporation's knowledge of various facts implies an allegation of collective corporate scienter. At the motion hearing, Defendant argued against the concept of collective corporate scienter, citing *Cummings*

*v. Paramount Partners, LP*, 715 F. Supp. 2d 880, 906 (D. Minn. 2010). In *Cummings*, the court held that the scienter of senior corporate executives or officers of a partnership can be imputed to the corporation or partnership as a whole. *Id*; *see also In re Medtronic Inc. Sec. Litig.*, 618 F. Supp. 2d 1016, 1035 (D. Minn. 2009). Plaintiff argues that neither case is applicable because both dealt with securities fraud, unlike this case. Though *Cummings* and *Medtronic* did involve a different type of fraud, scienter is a common element in any fraud claim, so the cases are not distinguishable on this basis.

Corporate scienter can be properly alleged only when the scienter of an individual corporate officer has also been alleged, because corporate scienter can only be imputed from a *corporate officer*. Here, Plaintiff has not alleged the scienter of any corporate officer of Defendant, so the corporate scienter of Defendant has not been sufficiently alleged. Because no corporate scienter has been properly alleged for Defendant as a whole, it cannot be imputed to Defendant's employee, Wendy Little.

Accordingly, Plaintiff has not stated a claim for fraudulent misrepresentation and suppression of material facts. It is possible, however, that Plaintiff may be able to rectify its deficient allegations if they have such curing facts. Thus, the Court recommends dismissal of this claim without prejudice.

**B. Count XIII (Violation of Minnesota Deceptive Trade Practices Act)**

The Minnesota Deceptive Trade Practices Act prohibits numerous misleading and deceptive commercial practices, including the misrepresentation of the quality of goods and services and engaging in conduct that would likely create confusion or misunderstanding about a product or service. 27 Michael K. Steenson *et al.*, *Minnesota Practice-Products Liability Law* § 6.14 (2012 ed.) In part, the Act permits injunctive relief for individuals likely to be harmed by

a deceptive trade practice. *Id*. The law was enacted to protect the public from these deceptive trade practices and to provide a remedy to prevent them from continuing. *Id*.

### 1. Plaintiff's Standing to Bring a Claim Under the Act

Defendant argues that Plaintiff has failed to allege a public benefit to the litigation, which is a requirement for standing to bring a claim under Minnesota Statute § 8.31, subd. 3a. Defendant further argues that to allege a public benefit, Plaintiff must allege that Defendant's misrepresentations were disseminated to the public at large. Plaintiff does not dispute this requirement, but argues it is satisfied. Plaintiff argues it is a reasonable inference that the sales pitch it received in 2007 was a standard sales pitch disseminated to the public at large. The Court disagrees. The alleged facts do not indicate whether the pitch was standard or specialized, or whether the pitch was made to a small defined class of clients or to the public at large. At no point in the Amended Complaint does Plaintiff allege that the misrepresentations were made to anyone other than Plaintiff.

Plaintiff misapplies *Collins v. School of Business, Inc.*, 655 N.W.2d 320, 330 (Minn. 2003), by suggesting that any misrepresentation made in the context of a sales presentation or brochure is always treated as having been disseminated to the public at large. In *Collins*, the plaintiff specifically alleged that the defendant school had provided certain brochures to all of its students. *Id*. Simply alleging that the defendant made the misrepresentation during a sales pitch or in a brochure is not sufficient to allege that the misrepresentation was disseminated to the public, however. Thus, Plaintiff does not have standing to bring a claim under the Minnesota Deceptive Trade Practices Act, and the claim should be dismissed.

## 2. Essential Elements of a Claim Under the Act

Alternatively, Defendant argues that even if Plaintiff has standing, Plaintiff fails to state a claim upon which relief can be granted because (1) Plaintiff does not allege any misrepresentations that are statements of fact; (2) Plaintiff does not allege a causal nexus between the misrepresentations and their injuries; and (3) Plaintiff does not allege the danger of future misconduct. Plaintiff contests all three of these arguments.

### a. Alleged Misrepresentations as Statements of Fact

Defendant argues that Plaintiff's alleged misrepresentation "about the superiority of Wells Fargo's fraud detection capabilities" (Am. Compl. ¶ 102) is a "generalized statement[] of product superiority," *Transclean Corp. v. Bridgewood Services, Inc.,* 77 F. Supp. 2d 1045, 1097 (D. Minn. 1999), rather than a specific factual claim as required by § 325D.44. Plaintiff argues that because Defendant is a bank, it should be held to a higher standard, so that even puffery would be treated as a statement of fact. The only case Plaintiff cites to support this proposition is *Kociemba v. G.D. Searle & Co.*, 707 F. Supp. 1517, 1525 (D. Minn. 1989), in which a pharmaceutical salesman's claims that a drug was "excellent for use" for women who had never borne children was treated as a statement of fact rather than opinion. *Id.*

Even under the *Kociemba* standard, Defendant's representations about the superiority of Wells Fargo's fraud detection capabilities cannot be considered a statement of fact.[2] Unlike *Kociemba*, there is no objective standard against which this statement could be measured. Therefore, Plaintiff has failed to state a claim under the Minnesota Deceptive Trade Practices Act for this statement.

---

[2] Defendant does not challenge the factual nature of Plaintiff's other § 325D.44 claim, based on Defendant's statement that "[Defendant] is leading the fight to protect your accounts from fraudulent transactions with tools such as Image Positive Pay and Payee Validation for both deposited and teller cashed checks." (Am. Compl. ¶ 102.)

### b. Causal Nexus Between the Misrepresentations and the Harm

Defendant argues that Plaintiff has failed to allege the required causal nexus between the misrepresentations and the harm. Plaintiff argues it has alleged that none of the promised fraud protection services were provided to it, and that "[Plaintiff] has been damaged and injured by, on account of, and as a direct, proximate, and foreseeable result of Defendant Wells Fargo's violations of this statute, in an amount to be determined at trial." (Am. Compl. ¶ 205). This statement alleges only a conclusory causal nexus without alleging any specifics or facts. Plaintiff does not specifically allege that, had Defendant used the Image Positive Pay and Payee Validation on the fraudulent check, the loss would have been avoided. Similarly, Plaintiff does not specifically allege that, had Defendant provided superior fraud detection service, the loss would have been avoided. While Plaintiff is not required to allege the precise facts (who, what, when, and where) demonstrating causation, allowing it to simply allege general causation without any supporting facts would render the requirement of pleading causation meaningless. Accordingly, Plaintiff has failed to state a claim under the Minnesota Deceptive Trade Practices Act for this reason as well.

### c. Danger of Future Misconduct

Finally, Defendant argues that Plaintiff fails to state a claim for injunctive relief because it does not allege any danger of future misconduct by Defendant. Plaintiff seems to argue that it only needs to allege potential future harm resulting from the past misconduct. Plaintiff additionally argues that it satisfies this requirement by alleging there is a "strong public interest in preventing deceptive practices by financial institutions." (Am. Compl. ¶¶ 206, 213.)

The purpose of injunctive relief is to prevent future misconduct by a defendant, not to remedy past violations. *See Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1185 (8th Cir.

2011). Whether Plaintiff is alleging potential future harm resulting from that past action is irrelevant, because injunctive relief would not prevent that future harm. Plaintiff's statement about the public interest in preventing deceptive practices is similarly irrelevant; it does not allege a danger of future misconduct by Defendant. Thus, Plaintiff has not stated a claim for injunctive relief because it has not alleged any danger of future misconduct by Defendant.

### C. Count XIV (Conversion)[3]

Defendant argues that Plaintiff has failed to state a claim for conversion because Plaintiff alleges only interference that was lawful, and because Plaintiff did not have a property interest in the transferred funds. Plaintiff responds that Defendant's interference was unlawful, and that Plaintiff needs to have had only a possessory interest in the transferred funds, which it did.

#### 1. Unlawful Interference

Defendant argues that its alleged interference with the transferred funds cannot be unlawful because Plaintiff asked it to perform the transfer. Defendant further argues that only a defendant's fraud or duress can defeat a defendant's right to rely on a plaintiff's consent, and Plaintiff does not allege fraud or duress. While Defendant is correct about the circumstances under which consent can be defeated, Plaintiff makes no such claim in the Amended Complaint or in its memorandum in opposition.

Plaintiff argues instead that it did not give consent because its consent was made expressly conditional on the allegedly fraudulent check clearing. That is, Plaintiff's alleged consent was only operational under a limited set of circumstances (*i.e.* any time after the check had cleared). By alleging that Defendant transferred the funds when the check had not cleared,

---

[3] Defendant also moved to dismiss Plaintiff's claims for wrongful set-off and negligence per se, which were subsumed in Count XIV. Plaintiff consents to the dismissal of these claims.

and that Plaintiff did not give consent to transfer the funds until the check had cleared, Plaintiff sufficiently alleges an unlawful interference.

2. **Sufficient Property Interest**

Defendant next argues that Plaintiff does not have a sufficient property interest in the transferred funds to state a claim for conversion. Specifically, Defendant relies on *Thomas B. Olson & Associates, P.A. v. Lefert, Jay & Polglaze, P.A.* for the proposition that an attorney does not have an enforceable property interest in the trust funds of his or her client. 756 N.W.2d 907, 922 (Minn. App. 2008). This is not the holding in *Lefert*, which merely held that for one attorney to claim conversion against another attorney for client funds held by the second attorney, the first attorney must perfect his lien claim. Furthermore, in *Lefert*, the attorney attempting to enforce a property interest was attempting to do so against the directions of the true owner (the client) and never had possession of the funds in the first instance.

Defendant also argues that allowing a law firm to bring a conversion claim against a bank would absolve Plaintiff of any responsibility to protect the stolen funds. To support this argument, Defendant cites *Branch Banking & Trust Co. v. Witmeyer*, Case No. 3:10cv55, 2011 WL 3297682 (E.D. Va. Jan. 6, 2011), in which a magistrate judge recommended that summary judgment be awarded to a bank on a conversion claim under similar facts. Regardless of any merit the policy goals of *Witmeyer* may have, such goals cannot override clear precedent in Minnesota that any person in possession of property as a bailee may maintain a conversion action for the loss of that property by the wrongful act of another. *See, e.g. Brown v. Shaw*, 53 N.W. 633, 634 (Minn. 1892); *Chamberlain v. West*, 33 N.W. 114, 114 (1887).

Here, Plaintiff alleges it was a bailee of the funds held in in trust for its clients and thus may sue for conversion. Although Plaintiff does not cite any cases specifically holding that a law

firm is a bailee in this circumstance, Plaintiff relies generally on *Colwell v. Metropolitan Airports Commission, Inc.*, 386 N.W.2d 246 (Minn. Ct. App. 1986), to establish the elements necessary to create a bailment: "(1) Delivery without transfer of ownership; (2) implied or express acceptance; and (3) an express or implied agreement that the goods be returned." *Id.* at 247 (quoting *Ekholm v. Wilkins Dodge, Inc.*, 212 N.W.2d 890, 893 (1973) (Otis, J., dissenting) (citations omitted)). Bailment is a broad concept. *See Ekholm*, 212 N.W.2d at 892. Money can be held in bailment. *Nat'l Corp. for Housing P'ship v. Liberty State Bank*, 836 F.2d 433, 436-37 (8th Cir. 1988) (discussing the nature of security deposits held by landlord).

The Court agrees that Plaintiff's holding of funds in trust for its clients satisfies the required elements of a bailment, at least to withstand a motion to dismiss. Defendant essentially abandoned its counter argument in its post-hearing letter response, stating it "does not take issue" with Plaintiff's position that "Plaintiff was the bailee of its clients' funds." (Def.'s Letter at 4, Aug 3, 2012, ECF No. 23.) Accordingly, because under Minnesota law, a bailee may maintain a conversion action for the loss of property by the wrongful act of another, Plaintiff's allegation that it was the bailee of its clients' funds sufficiently avers the necessary property interest to state a claim for conversion against Defendant.

## IV. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Partial Dismissal (ECF No. 6) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Counts I, V, XI, XII, XIII, and Count XIV (with respect to claims for wrongful set-off and negligence *per se*) **BE DISMISSED WITH PREJUDICE**;

2. Count IV **BE DISMISSED WITHOUT PREJUDICE**; and

3.  Count XIV (as it pertains to conversion) be allowed to stand.

Dated: August 22, 2012

    s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **September 6, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.